**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

State Farm Mutual Automobile
Insurance Company,

       Plaintiff,

    v.                        Case No. 1:07cv457

Sharon Woods Collision              Judge Michael R. Barrett
Center, Inc., *et al.*,

       Defendants.

**OPINION & ORDER**

     This matter is before the Court upon Plaintiff State Farm Mutual Automobile Insurance Company's Motions for Summary Judgment and Preliminary and Permanent Injunction (Doc. 22).  Defendants have filed a Response in Opposition (Doc. 26), and Plaintiff has filed a Reply (Doc. 28).  Also pending before the Court is Defendant Bernie R. Burckard's Motion to Dismiss (Doc. 16).  Plaintiff has filed a Response in Opposition (Doc. 20).  This matter is now ripe for review.

**I.**     **BACKGROUND**

     Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") claims that Defendants Sharon Woods Collision Center ("SWCC") and Bernie R. Burckard have refused to remove a sign placed in front of the SWCC repair shop which uses the State Farm trademark.  Specifically, the sign states:  "We Handle State Farm Claims, See Us First!  Lifetime Warranty" (Doc. 23, Ex, C-2)  The sign does not use State Farm's logo, but does use red ink, which Plaintiff maintains it uses in all of its advertising.  (Id., Ex. B,

O'Flaherty Decl., ¶¶ 6, 12)

The facts of this case are largely not in dispute. Defendants admit that they have used the sign. Defendant SWCC is an automobile services center and body shop which engages in collision repair, including body, paint, frame, and mechanical related services, as well as work on suspensions, air conditioning, air bags, and electronics. Defendant Burckard is the sole shareholder of SWCC. SWCC was at one time an approved auto repair facility in State Farm's Service First program. This program is now known as State Farm Select Service.

Defendant Burckard states in an affidavit that he removed the sign when this lawsuit was filed, and has no intention of displaying the sign until this Court rules that he is permitted to do so. (Doc. 26, Ex. 1, Burckard Aff. ¶ 22)

Since 1996, State Farm has had a validly registered trademark in "STATE FARM." The trademark is for underwriting and servicing auto, homeowners, fire and life insurance. (Doc. 23, Ex. B-1)

In its Complaint, State Farm brings claims for (1) federal trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin, false description, and dilution under 15 U.S.C. § 1125; (3) unfair or deceptive acts or practices under Ohio Revised Code § 1345.02(B); and (4) trademark infringement under Ohio common law. (Doc. 1) State Farm now moves for summary judgment on all of its claims; and also seeks a preliminary and permanent injunction.

## II.    ANALYSIS

### A.    Defendant Burckard's Motion to Dismiss

Defendant Burckard moves to dismiss all claims brought against him based upon

a failure to state a claim. Burckard argues that Plaintiff has not alleged any specific actions by him which were performed outside his capacity as shareholder, General Manager, or employee of SWCC.

However, several district courts within the Sixth Circuit have held that employees and corporate officers can be held individually liable under the Lanham Act. *CCA Global Partners, Inc. v. Carpetmax Flooring Center*, 2006 WL 581016, *2 (W.D.Ky. Mar. 6, 2006) (unpublished) (where an officer personally takes part in the infringing activity or direct others to do so, the officer is liable as an actor, not merely as an agent or owner of the corporation), *citing* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed. 2005); *Hair Associates, Inc. v. National Hair Replacement Services, Inc.*, 987 F.Supp. 569, 590-91 (W.D.Mich. 1997) (a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation); *Two Men and a Truck/International, Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, 1995 WL 549278, *4 (W.D. Mich. July 24, 1995) (unpublished) ("Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their Employment."), *citing Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978). Several circuit courts have held similarly. *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) (corporate officer may be individually liable for trademark infringement); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978) (individual defendant may be held liable for trademark infringement if he or she directly participated in the infringement); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.1996) (individual defendant may be held liable for trademark infringement if he or

she intentionally induced another to infringe a trademark); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("If an individual actively and knowingly caused the infringement, he is personally liable."); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) (corporate officer who directs, controls, ratifies, participates in, or is moving force behind infringing activity is personally liable for trademark infringement without regard to piercing of corporate veil).

Similarly, Ohio courts have held that a corporate officer can be held personally liable for his or her actions in violation of Ohio Revised Code § 1345.02 where the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein. *Grayson v. Cadillac Builders, Inc.*, 1995 WL 546916, *3 (Ohio Ct. App. Sept. 14, 1995) (unreported); *citing State ex rel. Fisher v. Am. Courts, Inc.*, 644 N.E.2d 1112, 1114 (Ohio Ct. App. 1994).

Finally, the Sixth Circuit has recognized that trademark claims under Ohio law follow the same analysis as those under the Lanham Act, and any discussion of federal trademark claims will therefore encompass the state trademark claims as well. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003). Accordingly, those federal law cases permitting personal liability where an employee or corporate officer personally takes part in the infringing activity, or direct others to do so, are applicable to Plaintiff's trademark claims under Ohio common law.

While this issue has been presented to the Court on a motion to dismiss, the Court notes that Burckard states in his Affidavit that "I placed an A-frame type sandwich board sign at my location in direct response to customers advising of insurance company appraiser attempts to steer business away from my shop to other shops and as a response

to such representations." (Doc. 26, Ex. 1)  Based upon this evidence, the Court finds that Burckard was personally involved in the alleged infringing activity.  Therefore Burckard is subject to personal liability on Plaintiff's claims under the Lanham Act; claims of  unfair or deceptive acts or practices under Ohio Revised Code § 1345.02; and trademark infringement under Ohio common law.   Accordingly, Defendant Burckard's Motion to Dismiss (Doc. 16) is DENIED.

###　B.　　Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

###　B.　　The Lanham Act

Plaintiff alleges violations under two sections of the Lanham Act: (1) trademark

infringement under 15 U.S.C. § 1114[1] and (2) false designation of origin, false description,

and dilution under 15 U.S.C. § 1125.[2]

---

[1]Under 15 U.S.C. § 1114:

(1) Any person who shall, without the consent of the registrant--

>  (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

>  (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

[2]Under 15 U.S.C. § 1125(a):

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

>  (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

>  (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In addition, 15 U.S.C. § 1125(c)(1) provides:

>  Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction

1.    **Trademark infringement**

To establish liability for trademark infringement under section 1114, the trademark registrant must show: (1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion.  *Too, Inc. v. TJX Companies, Inc.*, 229 F.Supp.2d 825, 829 (S.D.Ohio 2002), *citing*, *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1086-88 (D.Md. 1995); *see also Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 622-23 (6th Cir. 1996) ("In order to avoid summary judgment in a Lanham Act case alleging violations of § 32 (15 U.S.C. § 1114) and § 43 (15 U.S.C. § 1125), the nonmoving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement.").

The only dispute between the Parties is whether Defendants' sign caused a likelihood of consumer confusion.   The Sixth Circuit utilizes an eight-factor test in ascertaining whether a likelihood of confusion exists: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000).

--------

against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *PACCAR Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 249-50 (6th Cir. 2003), *quoting*, *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). The ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997).

### a. *Strength of the mark*

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music*, 109 F.3d at 280. Defendants concede that the strength of Plaintiff's mark is "readily apparent." Therefore, this factor weighs in favor of Plaintiff.

### b. *Relatedness of goods or services*

Defendants argue that Plaintiff's trademark applies to insurance claim processing, and therefore it is not similar to Defendants' business of repairing automobiles.

The Sixth Circuit evaluates the relatedness of goods by assigning the dispute in question to a place within a "tripartite system." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 516 (6th Cir. 2007), *citing AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004). If the parties are in direct competition, "confusion is likely if the marks are sufficiently similar." *Id.*, *quoting AutoZone*, 373 F.3d at 797. If the goods are "somewhat related, but not competitive," the likelihood of confusion determination will turn on one of the other factors. *Id.* If the products are unrelated, a likelihood of confusion is

"highly unlikely."  *Id.*

The Court finds that the Parties are not in direct competition, but the services offered by Plaintiff and Defendants are somewhat related.  Plaintiff does not engage in automobile repair, but it does sponsor a program which identifies repair service providers as State Farm Select Service repair providers.  As the Sixth Circuit has explained: "Services and goods are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."  *Id.*, *quoting Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283-84 (internal quotation marks omitted).  The Court finds that buyers seeing the sign in front of SWCC are likely to believe that the automobile repair services performed by Defendants are somehow connected with, or sponsored by Plaintiff. Because the goods are "somewhat related, but not competitive," the likelihood of confusion determination will turn on one of the other factors.

### c. *Similarity of marks*

Defendants argue that there is no similarity of the marks other than the use of the words "State Farm" and Defendants' coincidental use of red ink on its sign.

"Similarity of marks is a factor of considerable weight."  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283.  The relevant inquiry is whether "the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark." *Wynn Oil*, 839 F.2d at 1188.  The Court finds that the similarity of the marks is undeniable. Defendants' use of the words "State Farm" in the sign is identical to Plaintiff's mark:

"STATE FARM."  Therefore, this factor weighs in favor of Plaintiff.

        **d.**      ***Actual confusion***

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion."  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283.  However, due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available.  *Id.*  Plaintiff concedes that at this stage of litigation there is no evidence of actual confusion.  Therefore, this factor has no effect on the analysis of likelihood of confusion.

        **e.**      ***Marketing channels***

This factor requires the Court to "consider the similarities or differences between the predominant customers of the parties' respective goods or services."  *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285.  Further, this Court must determine "whether the marketing approaches employed by each party resemble each other."  *Id.*  "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases."  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002).

Plaintiff argues that the Parties offer the same services to the same customer base. Plaintiff states that in addition to other marketing channels, its insurance agents typically post signage in front of their facilities and use bill boards to advertise their affiliation with State Farm.

The Court notes that it is not Plaintiff who is offering the same services as

Defendants, but instead it is those automobile repair centers who participate in Plaintiff's Select Service program. Plaintiff has provided evidence that those repair centers are specifically prohibited by the State Farm Select Service agreements from using the "STATE FARM" trademark. (Doc. 23, Ex. B, O'Flaherty Decl., Ex. 12) Moreover, insurance agents who advertise their insurance-related services through signs and billboards are not offering the same automobile repair services offered by Defendants. Therefore, the Court finds that this factor does not weigh in favor of Plaintiff.

### f.   *Customer care*

In assessing the degree of purchaser care, courts typically use a "typical buyer exercising ordinary caution" standard. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285. When potential buyers possess special expertise or are sophisticated purchasers of the goods at issue, a higher standard is appropriate, and the likelihood of confusion decreases. *Id.* Similarly, purchasers of more expensive products are more likely to exercise care, thus reducing the possibility of confusion. *Id.*

The Court previously found that buyers seeing the sign in front of Defendants' service center are likely to believe that the automobile repair services performed by Defendants are somehow connected with or sponsored by Plaintiff. However, the Parties have indicated that a customer insured by State Farm who is need of repairs is referred to an automobile repair center which is a part of the State Farm Select Service program. It is not clear from the record whether it is explained to the insured the difference between repair centers in the program and those which are not a part of the program. In this respect, the potential buyer differs from someone merely seeing the sign in front of the SWCC. The Court finds that there are genuine issues of material fact regarding what

knowledge the potential buyer will posses.  Therefore, this factor does not weigh in favor of Plaintiff.

### g.     *Intent*

The intent of the defendant in a trademark action is relevant because "purposeful copying indicates that the alleged infringer . . . believes that his copying may divert some business from the senior user."  *Leelanau Wine Cellars*, 502 F.3d at 520, *quoting Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286.

There is little dispute that Defendants' use of "State Farm" on its sign was purposeful copying.  Defendant Burckard states in his affidavit that the sign was "in direct response to customers advising of insurance company appraiser attempts to steer business away from my shop to other shops . . ."  (Doc. 26, Ex. 1, Burckard Aff. ¶ 16)  In other words, the use of the sign was an attempt regain customers which Defendant Burckard believed Plaintiff was "steering" away from his automobile repair center.  However, there is no evidence that Defendants intended for customers to be confused as to whether the SWCC was sponsored by State Farm.  The purpose of the Lanham Act is to prevent customer confusion, not to prevent competition.  *See Leelanau Wine Cellars*, 502 F.3d at 515  ("The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."), *quoting Daddy's Junky Music Stores*, 109 F.3d at 280. Therefore, the Court finds that there is a genuine issue of material fact as to Defendants' intent, and this factor does not weigh in favor of Plaintiff.

### h.     *Expansion into product lines*

A strong likelihood that the alleged infringer will expand its business to compete with

a senior user will contribute to a finding of a violation. *Leelanau Wine Cellars*, 502 F.3d at 520, *quoting Daddy's Junky Music Stores*, 109 F.3d at 287. Plaintiff argues that the Parties already compete in the same field, and therefore this factor is irrelevant. This Court has previously held as such. *See Tdata Inc. v. Aircraft Technical Publishers*, 411 F.Supp.2d 901, 911 (S.D.Ohio 2006); *Victoria's Secret Stores v. Artco Equip. Co., Inc.*, 194 F.Supp.2d 704, 728 (S.D.Ohio 2002). While Defendant does not compete in the automobile repair business, it does sponsor a program which includes participating automobile repair businesses. From this perspective, the Court finds that there is enough similarity between the Parties' business that the expansion factor is irrelevant.

Based on the above analysis, the Court finds that these factors, when viewed together, do not indicate that there is a likelihood of consumer confusion. While Defendants concede the strength of Plaintiff's mark, and the Court has found that Defendants use of "State Farm" is identical to Plaintiff's mark, the Court finds that the weight of these factors is lessened in light of the discussion of Defendants' affirmative defense of fair use. Moreover, there are genuine issues of material fact regarding the factors of customer care and Defendant's intent, and there is no evidence of actual confusion.

### 2.  Defendants' Defenses

Plaintiff argues that Defendants cannot raise the defense of fair use because it was not plead in Defendants' Answer. It is well settled that a failure to raise an affirmative defense by responsive pleading does not always result in waiver. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). If a plaintiff receives notice of an affirmative defense by some means other

than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.  992 F.2d at 1445, *citing Grant v. Preferred Research, Inc*., 885 F.2d 795, 797 (11th Cir. 1989).  Here, Plaintiff raised the affirmative defense of fair use itself in its own Motion for Summary Judgment.  Plaintiff explained that in previous correspondence between counsel, counsel for Defendants suggested that the use of Plaintiff's mark constitutes fair use.  Plaintiff clearly had notice that Defendants intended to rely upon fair use as an affirmative defense.  Moreover, Plaintiff has not articulated any prejudice it has suffered as a result of Defendants failure to specifically plead fair use as a defense in their Answer.  Therefore, the Court finds that Defendants have not waived this affirmative defense.

Defendants argue that the use of Plaintiff's name on its sign is a fair use and is a form of comparative advertising under 16 C.F.R. § 14.15.  This regulation cited by Defendants is a policy statement by the Federal Trade Commission, and is based upon the FTC's investigation of industry trade associations and the advertising media regarding their comparative advertising policies.  While this policy statement makes it clear that the FTC favors comparative advertising, the Court finds that caselaw from within the Sixth Circuit is more instructive on the applicability of the fair use defense.

The "fair use" defense permits a party's use, "otherwise than as a mark," of a term "which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4).  "Under the doctrine of 'fair use,' the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001) (emphasis in original).  As this Court has explained:

A term or symbol is used as a trademark when the producer uses it to identify the source of his goods to the public and to distinguish those goods from others. *See M.B.H. Enters. v. WOKY, Inc.*, 633 F.2d 50, 53-54 (7th Cir. 1980). In contrast, a descriptive term identifies "a characteristic or quality of an article or service, . . . as, for example, its color, odor, function, dimensions, or ingredients." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1187 (5th Cir. 1980). Descriptive terms receive trademark protection only if they have acquired a secondary meaning to the consuming public. *Id.* at 1183. A mark has a secondary meaning if it connotes "a mental association in buyers' minds between the alleged mark and a single source of the product." *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 425 (5th Cir. 1984). Examples of descriptive terms with sufficient secondary meanings include "Vision Center," when used in reference to a place where one purchases eyeglasses, and "Everready," when used in reference to batteries or light bulbs. *See Soweco Inc.*, 617 F.2d at 1183-84.

*Victoria's Secret Stores*, 194 F.Supp.2d at 724-25.

In considering a fair use defense, a court should consider whether the defendant has used the mark: (1) in its descriptive sense; and (2) in good faith. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003), *citing Victoria's Secret Stores*, 194 F.Supp.2d at 724. Plaintiff argues that in *PACCAR, Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 255-56 (6th Cir. 2003), the Sixth Circuit held that likelihood of confusion precludes the fair use defense. However, in overruling this holding from *PACCAR*, the Supreme Court has held that some possibility of consumer confusion about the origin of goods is compatible with fair use of a mark. *K.P. Permanent Makeup v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

Therefore, the Court must first determine if Defendants' use of the words "State Farm" was to describe its services to the public, or whether its use would be perceived by the consumer as an indicator of source. The Court must then determine whether Defendants' use was in good faith.

In *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), the

defendant operated an automobile repair business specializing in the repair of Volkswagen and Porsche vehicles, but was in no way connected with the Volkswagen company. *Id.* at 351. The defendant placed a large sign on the front of his premises which read "Independent Volkswagen Porche Service." *Id.* The defendant also incorporated the word "Independent" into his advertising. *Id.* The district court, sitting without a jury, found that the defendant's use of the word "Volkswagen" did not constitute trademark infringement because the defendant's use of the word "independent" sufficiently distinguished his business from those affiliated with the plaintiff's company. *Id.* The Ninth Circuit affirmed, noting that the defendant's use of the word "Independent" whenever the terms "Volkswagen" or "VW" appeared in his advertising was sufficient to distinguish his business "to the eye of the customer." *Id.* at 352. The Ninth Circuit stated that the district court was correct to weigh factors such at "the size, style and appearance of the advertising articles and displays;" the fact that the defendant "did not use Volkswagen's distinctive lettering style or color scheme, not did he display the encircled 'VW' emblem." *Id.* The court concluded that under this view of the case, it was unnecessary to determine whether the phrases "Volkswagen Service" and "VW Service" had acquired secondary meaning. *Id.*

In *PACCAR, Inc. v. Telescan Techs*, the Sixth Circuit specifically rejected the approach followed in the *Volkswagenwerk* decision, which is often referred to as a "nominative fair use" defense.[3] However, the status of the "nominative fair use" defense

---

[3]The Ninth Circuit has formed a distinction between nominative fair use and classic fair use. *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 307-308 (9th Cir.1992). The Ninth Circuit has explained that nominative fair use, unlike classic fair use, "does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *Id.* at 308. The Ninth Circuit's analysis requires that: (1) the product must not be readily identifiable without the mark; (2) the user must utilize only so much

is unclear within this circuit. In *PACCAR*, the Sixth Circuit rejected the Ninth's Circuit's nominative fair use analysis because it replaces the "likelihood of confusion" test. 319 F.3d 256, *citing Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). Nevertheless, the court went on to apply the Ninth Circuit's nominative fair use analysis, but found that the facts of the case did not satisfy the requirements of the nominative fair use analysis. 319 F.3d at 256-57.

The district court in *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,* 339 F.Supp.2d 944, 963 (W.D.Mich. 2004) held similarly. The court acknowledged the Ninth Circuit's nominative fair use analysis, and discussed its application in the *Volkswagenwerk* decision. *Id.* at 963. However, the court concluded that the defense was not applicable because there was evidence which showed that the defendant was not simply using the plaintiff's mark in a descriptive manner, but instead was using the mark to represent that it was selling products manufactured by the plaintiff.

In *Tennessee Walking Horse Breeders' and Exhibitors' Ass'n v. National Walking Horse Ass'n*, 2007 WL 325774, *12 (M.D.Tenn. Jan. 31, 2007) (slip op.), the district court relied upon the decision in *Bliss Clearing Niagara* and referenced the Ninth Circuit's term "nominative fair use." However, the court applied the Sixth Circuit's fair use test in *ETW Corp. v. Jireh Publ'g, Inc.*, cited above by this Court. Under this analysis, the court found that given the factual disputes about the intentions of the defendant and its alleged animosity toward the plaintiff, the issue of "good faith" is for trial. *Id.*

---

of the mark "as is reasonably necessary to identify the product," and (3) the user cannot do anything "that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*

This Court followed a similar approach in finding that the alleged infringer's use of a mark in its metatags "is not in a good faith, descriptive sense, but is in a bad faith, bait-and-switch, create-initial-confusion sense." *Tdata Inc. v. Aircraft Technical Publishers*, 411 F.Supp.2d 901, 912 (S.D.Ohio 2006), *citing Victoria's Secret Stores*, 194 F.Supp.2d at 725.

The above review of the applicable caselaw within this circuit leads the Court to conclude that while courts have adopted the Ninth Circuit's definition of a nominative fair use, the courts have declined to adopt the Ninth Circuit's nominative fair use analysis. Instead, the courts have applied the fair use test found in *ETW Corp. v. Jireh Publ'g, Inc*. Accordingly, this Court will do the same.

The Court finds that there is a genuine issue of material fact as to whether Defendants' use of Plaintiff's mark is in its descriptive sense.  The statement "We handle State Farm claims" certainly describes the type of services the SWCC provides to the public.  The Court notes that Defendants did not use State Farm's logo, but merely referenced Plaintiff's name, albeit in red ink.  However, it is not clear whether use of "State Farm" without the use of a disclaimer of any sponsorship by Plaintiff, such as the defendant's use of "independent" in the *Volkswagenwerk* decision, is sufficient to remove Defendants' use out of the trademark sense and into the descriptive sense.

In addition, the Court has found that there are genuine issues of material fact regarding Defendants' intent in its use of the Plaintiff's mark.  The Court finds that in turn, there is a genuine issue of material fact as to whether Defendants' use was in good faith.

Based on the foregoing, the Court finds that sufficient questions of fact remain as to Defendants' affirmative defenses to require trial of the question whether those

affirmative defenses protect them from liability.

### 3. False designation of origin and false description

To establish liability for false designation of origin under section 1125, a plaintiff must show: (1) the false designation must have a substantial effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). A description of origin will be considered false if it creates a likelihood of confusion in the consuming public. *Id.*, *citing Consumers Union of the United States v. New Regina Corp.*, 664 F.Supp. 753, 764 n.12 (S.D.N.Y. 1997). The factors for determining likelihood of confusion for a false designation of origin claim are identical to those for a trademark infringement claim. *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 195 F.Supp.2d 1024, 1030 (S.D.Ohio 2001). Given the Court's ruling on Plaintiff's claim for trademark infringement, the Court finds that Plaintiff is not entitled to summary judgment on its claims for false designation of origin and false description.

### 4. Dilution

The law governing trademark dilution is independent and distinct from trademark infringement law. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 576 (6th Cir. 2000). To establish liability for trademark dilution under section 1125(c), a plaintiff must show: (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *Id.* at 577.

Defendants only contest the fifth element of Plaintiff's dilution claim. In addressing this element, the Supreme Court has noted that "direct evidence of dilution such as

consumer surveys will not be necessary if actual dilution can reliably be proven through circumstantial evidence-the obvious case is one where the junior and senior marks are identical." *Moseley v. V. Secret Catalogue*, 537 U.S. 418, 434 (2003).  Here, the Court has already determined that the marks are identical.

However, the Lanham Act excludes from its anti-dilution provision "[a]ny fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with . . . advertising or promotion that permits consumers to compare goods or services."  15 U.S.C. § 1125(c)(3)(A)(I).  Because the Court finds that genuine issues of material fact remain regarding Defendants' asserted fair use, Plaintiff is not entitled to summary judgment on its claim for trademark dilution. *Accord Tennessee Walking Horse Breeders' and Exhibitors' Ass'n*, 2007 WL 325774 at *14.

## C.   Ohio law

Plaintiff has also brought claims of unfair or deceptive acts or practices under Ohio Revised Code § 1345.02(B); and trademark infringement under Ohio common law.

As a point of clarification, Ohio Revised Code § 1345.02 is a part of Ohio's Consumer Sales Practices Act, and provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  However, in reading Plaintiff's Complaint and its Motion for Summary Judgment, the Court has determined that Plaintiff intended to bring its claim pursuant to Ohio's Deceptive Trade Practices Act, Ohio

Rev. Code § 4165.02(A).[4]  Defendants have made the same assumption, and refer to Ohio's Deceptive Trade Practices Act in their Response to Plaintiff's Motion.

Claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same likelihood of confusion standards as their federal counterparts. *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 195 F.Supp.2d 1024, 1030 (S.D.Ohio 2001)*; Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 724 n. 8 (S.D.Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes").  Because genuine issues of material fact remain as to the likelihood of confusion caused by Defendants use

---

[4]The Act provides:

A person engages in a deceptive trade practice when he or she:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

. . .

(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . .

(10) Disparages the goods, services or business of another by false representation of fact.

Ohio Rev. Code. § 4165.02(A).

of Plaintiff's mark, Plaintiff is not entitled to summary judgment on its Ohio law claims.

### D.    Preliminary and Permanent Injunction Standard

When ruling on a motion for a preliminary injunction, this Court must consider and balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *PACCAR*, 319 F.3d at 249, *citing*, *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods*., 134 F.3d 749, 753 (6th Cir. 1998).  These four considerations are factors to be balanced, not prerequisites that must be met. *Frisch's Restaurant, Inc. v. Shoney's Inc*., 759 F.2d 1261, 1263 (6th Cir. 1985), *citing In re DeLorean Motors Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006), *citing eBay Inc., et al. v. MercExchange, LLC*, 126 S.Ct. 1837, 1839 (2006). Therefore, the standard for the issuance of a permanent injunction is essentially the same as that for the issuance of a preliminary injunction. *Eller Media Co. v. City of Cleveland, Ohio*, 161 F.Supp.2d 796, 807, n.4 (N.D.Ohio 2001).  However, when a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits. *Id*., *citing Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).  Given the Court's finding of remaining genuine issues of material fact, the Court finds that a discussion of a permanent injunction is unnecessary

at this time.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). However, as this Court has previously recognized, under the Lanham Act "a movant may merit preliminary injunctive relief simply upon a showing of irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1428 (S.D.Ohio 1990), *quoting*, *Frisch's Restaurants,* 670 F.2d at 651; *see also Little Caesar Enters., Inc. v. R-J-L Foods, Inc.*, 796 F.Supp. 1026, 1030 (E.D.Mich. 1992) ("[w]here the three factors other than likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation."). The Court finds that in balancing the four factors, Plaintiff has met its burden and is entitled to preliminary injunctive relief.[5]

---

[5]Defendants argue that a preliminary injunction is not necessary because they have voluntarily ceased from using the sign. This does not, however, prevent the Court from granting injunctive relief. This Court has discretion to grant injunctive relief even after there has been cessation of complained-of conduct. *Ford Motor Co. v. Lapertosa*, 126 F.Supp.2d 463, 464, n.1 (E.D.Mich. 2000), *citing American Brd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 5 (1st Cir. 1997).

## 1.    Likelihood of Success on the Merits

While the Court has found that there are genuine issues of material fact regarding the likelihood of confusion caused by Defendants' use of Plaintiff's mark, the Court finds that there are sufficiently serious questions going to the merits to make them a fair ground for litigation.

## 2.    Irreparable Harm

In the Sixth Circuit "no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc*., 165 F.3d 1047, 1056 (6th Cir.1999), *citing*, *Wynn Oil Co. v. American Way Serv. Corp*., 943 F.2d 595, 608 (6th Cir.1991).  Ordinarily, "irreparable injury . . . 'follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Id.*, *quoting Wynn Oil*, 943 F.2d at 599.

Plaintiff argues that without a preliminary injunction, it will suffer irreparable harm due to its loss of control over the quality of service advertised and provided under its trademarks.  Plaintiff argues further that the damage to its good will and business reputation cannot be repaired or compensated by money damages.

The Sixth Circuit has rejected a "*per se* rule which deems the requirement of irreparable injury satisfied and the injunction prior to trial mandatory whenever the plaintiff shows ownership of a registered trademark or tradename used by the defendant." *National Bd. of Young Men's Christian Associations v. Flint Young Men's Christian Ass'n of Flint, Mich*., 764 F.2d 199, 201 (6th Cir. 1985).  However, as one district court has observed: "In

the context of trademark litigation, 'grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill,' regardless of whether the infringer is putting the mark to a good or favorable use." *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734, *746 (E.D.Mich. 2004), *quoting Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F.Supp.2d 398, 406 (D.N.J.1998). On these grounds, the Court finds that Plaintiff has sufficiently shown irreparable injury.

### 3.　　Substantial Harm to Others

As this Court has previously explained, this factor, in essence, requires that the Court balance the harm that Plaintiff would suffer in the absence of an injunction with the harm that Defendants will suffer if an injunction is issued. *HER, Inc. v. RE/MAX First Choice, LLC*, 468 F.Supp.2d 964, 977 (S.D.Ohio 2007), *citing NBBJ East Limited Partnership v. NBBJ Training Academy, Inc*., 201 F.Supp.2d 800, 808-09 (S.D.Ohio 2001).

Plaintiff argues that a preliminary injunction will not impact Defendants' ability to advertise under the SWCC name, or its ability to accept payments under insurance provisions. Defendants have not presented any arguments or evidence to the contrary.[6]

In that vein, the Court finds that it is not necessary for Plaintiff to post security pursuant to Federal Rule of Civil Procedure 65(c).[7] *See Roth v. Bank of the*

---

[6]In fact, the Court presumes that there would be permissible means of wording the sign which would permit Defendants to inform the public that it is able to perform repairs for State Farm customers.

[7]Federal Rule of Civil Procedure 65(c) states, in relevant part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

*Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978) (explaining that while a district court must consider whether security is appropriate, the decision is left to the sound discretion of the court); *see also Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.").

### 4. Public interest

It is well settled that avoiding confusion in the marketplace by issuing an injunction is in the public interest. *Worthington Foods, Inc.*, 732 F.Supp. at 1463, *citing*, *Central Benefits Mutual Ins. Co. v. Blue Cross and Blue Shield Ass'n*, 711 F.Supp. 1423, 1435 (S.D.Ohio 1989); *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987) (holding that there is a public interest in preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark). Accordingly, the Court finds that it is in the public's interest to enjoin any potential confusion caused by Defendants' use of "State Farm" on its sign.

In light of the above, the Court finds that Plaintiff is entitled to a preliminary injunction which would enjoin Defendants from displaying a sign which reads: "We Handle State Farm Claims, See Us First!"

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1.   Defendant Bernie R. Burckard's Motion to Dismiss (Doc. 16) is **DENIED**;

2.   Plaintiff State Farm Mutual Automobile Insurance Company's Motions for Summary Judgment and Preliminary and Permanent Injunction (Doc. 22) is

**DENIED in PART and GRANTED in PART**;

    a.    Plaintiff's Motion is denied to the extent that it seeks summary judgment on its claims;

    b.    Plaintiff's Motion is denied to the extent that it seeks a permanent injunction;

    c.    Plaintiff's Motion is granted to the extent that it seeks a preliminary injunction;

3.    Plaintiff has leave to amend its Complaint to reflect its intended section of the Ohio Revised Code upon which it relies within **twenty (20) days** from entry of this Order; and

4.    Plaintiff has **twenty (20) days** from entry of this Order to submit to the Court a proposed order preliminarily enjoining Defendants consistent with this Order.  The proposed order shall be submitted via the Court's Chamber's email address at Barrett_Chambers@ohsd.uscourts.gov and shall include the case number for this matter in the subject line of the email.

**IT IS SO ORDERED.**

                        */s/ Michael R. Barrett*
                        Michael R. Barrett, Judge
                        United States District Court